UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
REVEREND C.T. WALKER HOUSING
DEVELOPMENT FUND CORPORATION,

                Appellant,

  -against-

CITY OF NEW YORK and its Agencies, NYC
ECONOMIC DEVELOPMENT
CORPORATION, 181 WEST 135TH LLC,
NYCTL 1998-2 and 2015-A TRUSTS, BANK
OF NEW YORK MELLON as Collateral
Agent and Custodian,

                Appellees.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 1:17-cv-02323-FB
Case No. 1:17-cv-02438-FB

*Appearances*:
For Plaintiff:
CHARLES E. SIMPSON
EDMUND B. TROYA
Windels Marx Lane & Mittendorf LLP
156 West 56th Street
New York, NY 10019

For Defendants:
GABRIELA P. CACUCI
Office of the Corporation Counsel
100 Church Street, Room 5-223
New York, NY 10007

ARNOLD MITCHELL GREENE
LORI A. SCHWARTZ
Robinson Brog Leinwand Greene et al.
875 Third Avenue, 9th Floor
New York, NY 10022

NICKOLAS JOSEPH KARAVOLAS
Phillips Lytle LLP
620 Eighth Avenue, 23rd Floor
New York, NY 10018

**BLOCK, Senior District Judge:**

Appellant Reverend C.T. Walker Housing Development Fund Corporation ("C.T. Walker") appeals from orders of the Bankruptcy Court for the Eastern District of New York denying C.T. Walker's motion to sell real property located at 181 West 135th Street in New York City ("the Property") and granting its motion to lift the automatic stay provided by 11 U.S.C. § 362. For the reasons discussed below, the Court affirms both orders.[1]

# I

The relevant facts are not in dispute. C.T. Walker had owned the Property since the late 1980s, and it rented the bottom floor to the YMCA, which operated a Youth Center there. In 1987, the New York City Department of Housing Preservation and Development ("HPD") agreed to fund the development of the Property for low-income housing. Those funds were conditioned on C.T. Walker's agreement to covenants partially restricting the Property's use for 20 years to low-income, rent-stabilized housing units. C.T. Walker was able to provide these benefits, in part, thanks to a property tax exemption from the City. However, sometime before C.T. Walker filed its petition, the exemption expired, and the City declined to renew it. In the following

---

[1] Although the appeals were filed under separate dockets, the background and issues are sufficiently similar for the Court to dispose of both appeals in a single order. The Clerk is therefore directed to enter this Memorandum and Order in docket numbers 17-cv-2323 and 17-cv-2438.

years, C.T. Walker fell behind on several obligations, including its property taxes. In 2013 and 2015, the City sold tax lien certificates to the Bank of New York Mellon, giving the Bank the right to foreclose on the Property pursuant to those liens. The Bank assigned the certificates to two trusts, Appellees NYCTL 1998-2/MTAG and NYCTL 2015-A (collectively, "Trusts"). The Trusts initiated foreclosure proceedings, and the state court issued a Judgment of Foreclosure and Sale on January 15, 2016. At a public auction held on March 2, 2016, non-party Avraham Dishi placed the winning bid for the Property at $10.5 million and, in accordance with the Terms of Sale, deposited $1.15 million with the court-appointed Referee. On March 24, 2016, Dishi assigned his winning bid and the Terms of Sale to Appellee 181 West 135th LLC ("181 West"), an entity he created with the two second-highest bidders apparently for the sole purpose of the transaction. 181 West sought three adjournments of the closing date and a reduction in sale price, attributing the delay in part to the difficulty of obtaining title insurance due to the restrictive covenants. The Trusts agreed to the first two adjournments but refused to agree to a third or to reduce the sale price.

On May 4, 2016—one day before the scheduled closing date—181 West filed a Chapter 11 bankruptcy petition in the Eastern District of New York.[2] The closing was thus postponed by the automatic stay in the bankruptcy proceeding. The Trusts, C.T. Walker, and the City moved to lift the stay.

---

[2] *See* E.D.N.Y. Bankr. No. 16-41960.

C.T. Walker filed a separate Chapter 11 bankruptcy petition in the Eastern District on July 7, 2016, continuing to possess and conduct business on the Property as a debtor in possession.[3] In September 2016, C.T. Walker moved in the bankruptcy court under 11 U.S.C. § 363(b)(1)[4] to sell the Property. It sought a sale to 181 West for $9 million free and clear of all encumbrances and covenants except the above-mentioned restrictive covenants entered into with HPD.

On April 4, 2017, the bankruptcy court issued two orders, one denying the sale motion in the C.T. Walker Proceeding and the other granting relief from the stay in the 181 West Proceeding. It explained these decisions in a March 29, 2017 bench ruling.

As to the sale motion, the bankruptcy court held that, under New York law, the Property was not part of C.T. Walker's bankruptcy estate because the public auction extinguished C.T. Walker's equity of redemption before C.T. Walker filed its bankruptcy petition. *See* App'x to Appellant's C.T. Walker Br. at CTAPP-202-07.[5]

As to the motion for relief from the stay, the bankruptcy court reasoned that (1) 181 West had no equity in the bid deposit, its sole asset, because it had failed to close on the Property; (2) there would be no bankruptcy sale of the Property in the C.T. Walker

---

[3] *See* E.D.N.Y. Bankr. No. 16-43014.

[4] Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."

[5] The Court refers to C.T. Walker's appellate brief filed in docket number 17-cv-2323 as "Appellant's C.T. Walker Brief" and its appellate brief filed in docket number 17-cv-2438 as "Appellant's 181 West Brief."

4

Proceeding; and (3) the bid deposit was not necessary for an effective reorganization of 181 West. *Id.* at 207-08; *see also* App'x to Appellant's 181 West Br. at 181APP-270-71.

C.T. Walker timely appealed both orders.

## II

**A. Order Denying C.T. Walker's Motion to Sell the Property**

This Court reviews the bankruptcy court's "conclusions of law de novo, and findings of fact under a clearly erroneous standard." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990).

Under 11 U.S.C. § 541(a)(1), the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." For the bankruptcy court to order a sale under 11 U.S.C. § 363, the Property must qualify as property of the estate under § 541. *See In re Winimo Realty Corp.*, 2004 WL 1924797, at *4 (S.D.N.Y. Aug. 27, 2004). Applying New York law to similar facts, the Second Circuit held in *In re Rodgers* that property did not become part of the debtor's bankruptcy estate when it was subject to a tax lien foreclosure auction before the bankruptcy petition was filed. *In re Rodgers*, 333 F.3d 64, 66-67 (2d Cir. 2003). This Court is likely bound by the Second Circuit's interpretation of state law. *See Musah v. Houslanger & Assocs.*, PLLC, 2012 WL 5835293, at *3 (S.D.N.Y. Nov. 16, 2012) (acknowledging split in district courts but concluding that the Second Circuit's interpretation of state law is binding). In any event, the Court finds the Second Circuit's

5

reasoning in *Rodgers* persuasive.

Here, C.T. Walker had no cognizable "legal or equitable interests" in the Property at the time it filed the bankruptcy petition. First, C.T. Walker lost any interest in the Property by operation of the Judgment of Foreclosure and Sale. It explicitly provided that "after the filing of [the] notice of pendency of this action," the foreclosure defendants—including C.T. Walker—were "forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption" in the Property. App'x to Appellant's 181 West Br. at 181APP-142. The notice of pendency was filed on April 11, 2014. *Id.* at 181APP-136. The Judgment of Foreclosure extinguished any interest C.T. Walker had in the Property on that date. C.T. Walker therefore had no legal or equitable interest in the Property in July 2016, when it filed the bankruptcy petition.[6]

Second, even if the Judgment of Foreclosure and Sale had left C.T. Walker with an equity of redemption, New York law provides that it was extinguished by the foreclosure sale. Under New York Real Property Tax Law § 1194, the purchaser of a delinquent tax lien "may foreclose the lien as in an action to foreclose a mortgage." In such an action, the equity of redemption "allows property owners to redeem their property by tendering the full sum at any point *before the property is actually sold at a foreclosure sale.*" *NYCTL 1999-1 Tr. v. 573 Jackson Ave. Realty Corp.*, 921 N.E.2d 195,

---

[6] Although C.T. Walker's briefs make no mention of the language in the Judgment of Foreclosure and Sale, the Court may affirm on any basis apparent in the record. *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006).

199 (N.Y. 2009) (emphasis added). Moreover, New York Courts have held that the equity of redemption is extinguished by the foreclosure sale itself, regardless of whether a deed has been delivered to the sale purchaser. *See Bank of New York v. Ortiz*, 817 N.Y.S.2d 154, 155 (N.Y. App. Div. 2d Dep't 2006) (holding that public auction before filing of bankruptcy petition prevented property from entering the bankruptcy estate); *GMAC Mortg. Corp. v. Tuck*, 750 N.Y.S.2d 93, 95 (N.Y. App. Div. 2d Dep't 2002) ("Redemption is not permitted after a foreclosure sale, whether or not a deed has actually been delivered to the sale purchaser." (citation omitted)). Once the equity of redemption "has been lost pre-petition, the foreclosed property sold at a public sale is no longer property of the estate for purposes of Section 541." *Rodgers*, 333 F.3d at 68. Because the Property was not property of the estate pursuant to § 541, the bankruptcy court properly denied C.T. Walker's motion to sell the Property under § 363.

C.T. Walker's arguments to the contrary are unavailing. First, it argues that the equity of redemption expires not with the public auction but with the conveyance of the deed, citing *Nutt v. Cuming*, 155 N.Y. 309 (N.Y. 1898), and *M & T Real Estate Tr. v. Doyle*, 987 N.E.2d 257 (N.Y. 2013). Those cases are inapposite. In *Nutt v. Cuming*, the court held that the foreclosure sale, not the foreclosure judgment order, extinguished the equity of redemption. 155 N.Y. at 311-13. The court there had no occasion to

7

distinguish between the public auction and the conveyance of the deed.[7]

C.T. Walker cites *M & T Real Estate* and other cases for the proposition that "the consummation of a foreclosure sale takes place upon the delivery and acceptance of the deed." Appellant's C.T. Walker Br. at 17. However, "consummation of the sale" is a statutory phrase used in New York Real Property Actions and Proceedings Law § 1371(2), *see M & T Real Estate*, 20 N.Y.3d at 565, and C.T. Walker makes no argument that § 1371 is relevant here. *M & T Real Estate* is therefore inapposite.

Next, C.T. Walker contends that the Property is part of the estate because it maintains an equitable right of possession. However, as the court held in *Rodgers*, limited possession is an "incident of ownership" insufficient to bring the Property into the estate. *In re Rodgers*, 333 F.3d 64, 69 (2d Cir. 2003).

Finally, C.T. Walker argues that, contrary to the bankruptcy court's reasoning, the Referee's custodial ownership of the Property is not sufficient to remove it from the estate. However, it was the pre-petition foreclosure sale, not the Referee's custody of the Property, that extinguished C.T. Walker's equity of redemption and prevented the Property from falling into the bankruptcy estate.

Because the Property was not part of the bankruptcy estate, the bankruptcy court

---

[7] Furthermore, as Judge Vitaliano recently observed, "[w]hether or not formally and expressly, it is clear that decades of modern New York case law have overruled *Nutt* with respect to the pertinent principle [that the equity of redemption is extinguished by the conveyance of the deed, not the foreclosure sale]." *United States v. Chesir*, 171 F. Supp. 3d 63, 67 (E.D.N.Y. 2016), *appeal withdrawn* (July 21, 2016) (citing *In re Rodgers*, 333 F.3d 64, 69 (2d Cir. 2003)).

did not err in denying the motion to sell the Property.

**B. Order Granting Relief from the Automatic Stay**

The bankruptcy court also did not err by granting relief from the automatic stay in the 181 West bankruptcy proceeding.[8] Under 11 U.S.C. § 362(d)(2), after notice and hearing a bankruptcy court can grant relief from a "stay of an act against property, if—(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." "The bankruptcy court's decision on a motion to lift the automatic stay is reviewable only for an abuse of discretion." *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999).

Here, 181 West abandoned all equity in the property by failing to close the sale. And because 181 West is left with only the bid deposit as an asset, there is no reorganization necessary. Therefore, the bankruptcy court correctly held that both elements of § 362(d)(2) are met.

C.T. Walker admits as much in its brief: "On its face . . . it is apparent that [both factors are met]." Appellant's 181 West Br. at 14. It argues, however, that as a third party,[9] its interests are implicated as well, and therefore, it was a mistake to grant relief without considering those interests. However, § 362(d)(2) says nothing about

---

[8] The automatic stay only applies to "property of the estate," 11 U.S.C. § 362(a). In the 181 West bankruptcy proceeding, the property of the estate consisted only of the bid deposit 181 West placed before it decided not to close.

[9] While C.T. Walker is the debtor in its own bankruptcy action, the order granting relief from the automatic stay was issued in the 181 West bankruptcy proceeding.

9

contemplating the effects of lifting the stay on third parties. Nor does C.T. Walker point to any law to support its position.

Regardless, C.T. Walker's argument is contingent on its related argument that it retains a legal and equitable interest in the foreclosed property. However, as explained above, C.T. Walker's interest in the property was extinguished by the foreclosure sale.

Therefore, the bankruptcy court did not abuse its discretion by lifting the stay.[10]

### III

For the foregoing reasons, the bankruptcy court's orders are affirmed.

**SO ORDERED**

/S/ Frederic_Block_
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 5, 2018

---

[10] Appellant also argues that the bankruptcy court improperly granted relief from the stay under 11 U.S.C. § 362(d)(1) because it failed to apply the so-called *Sonnax* factors. *See In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). However, because the court properly granted relief under § 362(d)(2), any shortcoming in its § 362(d)(1) analysis is moot. *See In re New Era Co.*, 125 B.R. 725, 730 (S.D.N.Y. 1991) (holding that because both elements of § 362(d)(2) had been met, court need not reach the question of relief under § 362(d)(1)).